O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MITSUKO TUTHILL,<br><br>                    Plaintiff,<br><br>          v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social<br>Security,<br><br>                    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. CV 12-7666-OP

MEMORANDUM OPINION AND ORDER

The Court[1] now rules as follows with respect to the disputed issue listed in the Joint Stipulation ("JS").[2]

/ / /

/ / /

_____

    [1]  Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the United States Magistrate Judge in the current action.  (See ECF Nos. 5, 6.)

    [2]  As the Court stated in its Case Management Order, the decision in this case is made on the basis of the pleadings, the Administrative Record, and the Joint Stipulation filed by the parties.  In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).  (ECF No. 8 at 3.)

## I.

## DISPUTED ISSUE

As reflected in the Joint Stipulation, the disputed issue raised by Plaintiff as the grounds for reversal and/or remand is whether the Administrative Law Judge ("ALJ") properly determined that Plaintiff has a non-severe mental impairment. (JS at 4.)

## II.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

## III.

## DISCUSSION

### A.   Procedural History.

On July 7, 2006, Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income Benefits. (Administrative Record ("AR") at 115-22.) She alleged an onset of disability as of February 1, 2005, due to diabetes,

high blood pressure, pelvic surgery, low back pain, dizziness, shaky hands, poor concentration, nervousness, and problems with her thyroid, left leg, left knee, and urethra.  (Id. at 77-81, 83-87, 115-22.)  Her applications were denied initially and upon reconsideration.  (Id. at 77-81, 83-87.)

Plaintiff requested a hearing, and on November 6, 2008, a hearing was held.  (Id. at 8-62, 88.)  Plaintiff appeared with a non-attorney representative (id. at 8, 11, 465), and testified on her own behalf.  (Id. at 8-62.)

On December 18, 2008, the ALJ issued a decision finding Plaintiff not disabled ("2008 Decision").  (Id. at 70-76.)  The Appeals Council denied Plaintiff's request for review.  (Id. at 1-4.)

Plaintiff then filed an action in the United States District Court for the Western District of Washington, Case No. C09-5468-BHS.  On August 11, 2010, the District Court issued a decision remanding the case to the Commissioner.[3]  (Id. at 463-71.)

On September 11, 2010, the Appeals Council remanded the matter to the Agency for further proceedings, and ordered a subsequent claim for benefits – filed on July 30, 2009 – associated with the initial claim.  (Id. at 492.)

On November 17, 2011, another administrative hearing was held before a newly assigned ALJ.  (Id. at 447-62.)  The ALJ continued the hearing so that multiple consultative examinations could be performed.  (Id.)  On April 9, 2012, another hearing was held before the new ALJ, at which Plaintiff appeared with counsel and testified through an interpreter.  (Supplemental AR ("SAR") at 1-27.)  A medical expert and a vocational expert also testified.  (Id.)

---

[3]  That court found that the ALJ erred by allowing Plaintiff to testify at the hearing without the assistance of an interpreter because the ALJ failed to either: (1) develop a more complete record in determining that no interpreter was required given Plaintiff's level of fluency in English, or (2) postpone the hearing until an interpreter could be located and utilized.  (AR at 464-71.)

On May 9, 2012, the ALJ issued a decision again finding Plaintiff not disabled ("2012 Decision"). (AR at 414-31.) Plaintiff was informed that she had thirty days after receipt of the notice to file written exceptions to the decision if she disagreed with it. (Id. at 411-13.) Plaintiff did not file any written exceptions. (Id. at 407-09.)

**B.    The ALJ's Findings.**

The ALJ found that Plaintiff has the severe impairments of degenerative changes of the left knee and status post multiple surgeries. (Id. at 419.) The ALJ also found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, except that Plaintiff could only lift twenty pounds frequently and forty pounds occasionally; was able to stand and/or walk for a total of two hours in the morning and two hours in the afternoon; was unable to climb hills; and was able to perform only rare stooping and crouching. (Id. at 424.) Relying on the testimony of a vocational expert ("VE"), the ALJ concluded that Plaintiff was capable of performing her past relevant work as an electronics assembler and electronics tester. (Id. at 429-30.)

**C.    There Is No Reversible Error in the ALJ's Determination That Plaintiff Had a Non-Severe Mental Impairment.**

Plaintiff contends that the ALJ erred by finding that Plaintiff does not have a severe mental impairment and, specifically, that the ALJ reached this conclusion by improperly rejecting the opinions of three examining physicians and improperly weighing the overall evidence of record.

**1.    Background.**

Prior to the 2008 Decision, the only evidence in the record concerning Plaintiff's mental impairment was a September 2006 psychiatric evaluation from which the examining psychiatrist declined to render any psychiatric diagnosis; and a June 2007 evaluation from which a different psychiatrist, Dr. Stefan Lampe, diagnosed Plaintiff with major depressive disorder, and opined that she may have

certain resulting functional limitations.  (Id. at 332-35, 383-85.)  Dr. Lampe also stated that Plaintiff's prognosis was guarded without treatment but that "with appropriate treatment her prognosis [was] good."  (Id. at 384.)

In the 2008 Decision, the first ALJ found that Plaintiff had a medically determinable mental impairment, but that it was not a severe impairment.  (Id. at 73-74.)

After the 2008 Decision, additional evidence was submitted concerning Plaintiff's mental impairments.  In September 2009, Dr. Brett Trowbridge completed a psychological/psychiatric evaluation of Plaintiff.  (Id. at 769-85.)  Dr. Trowbridge interviewed Plaintiff, noted symptoms he observed during the interview, diagnosed her with major depressive disorder and anxiety disorder, not otherwise specified, and opined that she would have, among others, marked limitations in her ability to relate appropriately to supervisors and coworkers; interact appropriately in public contacts; respond appropriately to and tolerate the pressures and expectations of a normal work setting; and maintain appropriate behavior in a work setting.  (Id. at 770-72.)  He also opined, however, that mental health intervention in the form of outpatient mental health treatment and medication was likely to restore or substantially improve Plaintiff's ability to work for pay in a regular and predictable manner, noting that she was formerly on Alproazolam, as needed, for about six years – which she admitted "helped" her – but that her prescription ran out two months prior to her examination by Dr. Trowbridge.  (Id. at 773-74.)

In October 2009, Dr. Rogelio Zaragoza examined Plaintiff, diagnosed her with major depressive disorder, not otherwise specified, rule out major depression, and opined that she could not perform work activities on a consistent basis; maintain regular attendance in a workplace or complete a normal workday or workweek without interruptions from psychological symptoms; and deal with usual work-related stress.  (Id. at 806-09.)  Dr. Zaragoza also stated, however, that

Plaintiff was not then on any antidepressant medications, that her problem was "treatable," and that "[h]er condition should improve within the next 12 months if treated." (Id. at 809.)

In November 2009, state agency psychiatrist Jan L. Lewis completed a psychiatric review technique and a mental residual functional capacity assessment for Plaintiff. (Id. at 818-34.) Relying on Dr. Zaragoza's report and several records noting "no apparent mental abnormality," Dr. Lewis opined that Plaintiff had moderate limitations in maintaining concentration, persistence, or pace; in her ability to interact appropriately with the general public; and in her ability to accept instructions and respond appropriately to criticism from supervisors. (Id. at 828, 833-34.)

More than one year later – in December 2010 and January 2011 – Plaintiff saw therapist Ken Yabuki, who diagnosed her with major depressive disorder, assigned her a global assessment of functioning ("GAF") score of 45,[4] and encouraged her to seek treatment with a psychiatrist. (Id. at 971-76.)

In February 2011, Plaintiff saw Dr. Akira Kugaya, who diagnosed her with "likely [major depressive disorder]" and prescribed her with antidepressant medications. (Id. at 983.) One week later, Plaintiff saw Dr. Kugaya again, who then diagnosed her with major depressive disorder, recurrent, and noted that her progress was "steady towards the treatment plan." (Id. at 984-85.) A letter from Dr. Kugaya dated January 7, 2012, states that Plaintiff "ha[d] been under [his] service from February 5, 2011" (id. at 736), but the record contains no evidence of Dr. Kugaya's treatment of Plaintiff other than the two treating notes from February

---

[4] A GAF score between 41 and 50 indicates serious symptoms (e.g., suicidal ideation, obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e .g., no friends, unable to keep a job). Diagnostic and Statistical Manual of Mental Disorders 34 (American Psychiatric Ass'n, 4th ed. 2000) ("DSM-IV").

6

2011.

Finally, in January 2012, Dr. Ahmad S. Riahinejad completed a psychological evaluation of Plaintiff, in which he diagnosed her with major depressive disorder, and opined that she is able to understand, remember and carry out simple and repetitive instructions, but "could have mild to moderate difficulty understanding, remembering and carrying out complex and detailed instructions."[5] (Id. at 1009-16.)

In the 2012 Decision, the ALJ found that while "there is some evidence suggesting that there has been a deterioration in [Plaintiff's] mental state since the time of [the 2008] [D]ecision[,] . . . the record as a whole fails to establish that [she] has had a severe mental impairment at any time material hereto."  (Id. at 421.) First, the ALJ rejected Plaintiff's argument that she is limited to simple, repetitive tasks by giving reasons to reject Dr. Lewis' opinion, which he found "arguably" lent some support to that argument.  Second, the ALJ discussed the records of Plaintiff's mental health treatment and found that she had pursued such treatment "sporadically at best."  (Id. at 422.)  With respect to Dr. Kugaya specifically, Plaintiff noted that his "generally routine progress notes . . . cease in mid-February 2011, and he gives no indication in his January 7, 2012 statement that treatment was consistent or ongoing."  (Id.)  Finally, the ALJ stated:  "while I recognize that treating source opinions are generally entitled to great weight under the regulations, I am unable to assign the full measure of such weight to the opinion evidence to the extent that any of it arguably suggests that [Plaintiff] has greater 'paragraph B' limitations than [mild], in view of the overall evidence discussed

---

[5] The Commissioner accurately notes that while Dr. Riahinejad opined in a check-off-the-box form that Plaintiff had moderate limitations in understanding, remembering and carrying out complex instructions (AR at 1014), he stated in his written report that Plaintiff "*could have* mild to moderate difficulty understanding, remembering and carrying out complex and detailed instructions." (id. at 1013 (emphasis added)).

herein."  (Id.)

2.   **Legal Standard.**

A "severe" impairment, or combination of impairments, is defined as one that significantly limits physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1520, 416.920.  Despite use of the term "severe," most circuits, including the Ninth Circuit, have held that "the step-two inquiry is a de minimis screening device to dispose of groundless claims."  Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing Bowen v. Yuckert, 482 U.S. 137, 153-54, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987)).  A finding of a non-severe impairment is appropriate only when the evidence establishes merely a slight abnormality that has no more than a minimal effect on an individual's physical or mental ability to do basic work activities.  See Corrao v. Shalala, 20 F.3d 943, 949 (9th Cir. 1994) (citing Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988)); see also 20 C.F.R. §§ 404.1521(a), 416.921(a).  "Basic work activities" mean the abilities and aptitudes necessary to do most jobs, including "physical functions . . . ," "[u]nderstanding, carrying out, and remembering simple instructions," "[u]se of judgment," "[r]esponding appropriately to supervision, co-workers and usual work situations," and "[d]ealing with changes in a routine work setting."  20 C.F.R. §§ 404.1521(b), 416.921(b).

In assessing the severity of plaintiff's alleged mental impairment, the ALJ was required to reflect in the decision his consideration of plaintiff's mental functional limitations under four broad criteria (also known as the "paragraph B criteria"):  (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation.  See id. pt. 404, subpt. P, app. 1, § 12.00C; see also id. §§ 404.1520a, 416.920a.  If a claimant is rated as having greater than "mild" limitations in any of the first three criteria or more than no episodes of decompensation in criteria four, or if "the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to

do basic work activities," then the claimant's mental impairment should be found to be "severe."  Id.; see also id. §§ 404.1521, 416.921.

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians:  (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians).  See id. §§ 404.1502, 404.1527, 416.902, 416.927; see also Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Generally, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant.  Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007); Smolen, 80 F.3d at 1285.  The ALJ may only give less weight to a treating physician's opinion that conflicts with the medical evidence if the ALJ provides explicit and legitimate reasons for discounting the opinion.  See Lester, 81 F.3d at 830-31; see also Orn, 495 F.3d at 632-33; Soc. Sec. Ruling 96-2p.  Similarly, "the Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician."  Lester, 81 F.3d at 830 (quoting Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990)).  Even where an examining physician's opinion is contradicted by another doctor, the ALJ must still provide specific and legitimate reasons supported by substantial evidence to properly reject it.  Id. at 830-31 (citing Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995)).

The report of a nonexamining physician may serve as substantial evidence when it is supported by other evidence in the record and is consistent with that evidence.  Andrews, 53 F.3d at 1039-40; see also Pitzer, 908 F.2d at 506 (quoting Gallant, 753 F.2d at 1454) ("A report of a non-examining, non-treating physician should be discounted and is not substantial evidence when contradicted by all other evidence in the record.")).

### 3.   **Analysis.**

In arguing that she has a severe mental impairment, Plaintiff asserts that because the ALJ never "facially addressed" the opinions of Drs. Lampe, Trowbridge, and Zaragoza, he failed to give specific and legitimate reasons to reject their opinions, which was reversible error.  (JS at 6-8.)  Plaintiff also contends that it was improper for the ALJ to find that Plaintiff's mental impairment was non-severe because the mental health records submitted after the 2008 Decision "significantly shifted the weight of the evidence."  (Id. at 8-11.)

With respect to Plaintiff's first contention, the Court disagrees that the ALJ failed to give any specific and legitimate reason to reject the opinions of Drs. Lampe, Trowbridge, and Zaragoza.  Rather, the ALJ noted the opinion evidence in the record suggesting that Plaintiff had greater than mild paragraph B limitations, and then stated that he was rejecting those opinions in light of the overall evidence discussed in the decision.  In so stating, it appears the ALJ was referring to the paragraph that came just before, in which he discussed Plaintiff's sporadic mental health treatment.  Specifically, the ALJ noted that after Plaintiff was seen for a few months in the summer and fall of 2009, there was no evidence of mental health treatment again until over a year later – in December 2010 – and that after a few records from December 2010 through February 2011, the record was again silent until January 2012.  Plaintiff's pursuit of mental health treatment over a cumulative period of only six months out of the three and one-half years between the 2008 Decision and the 2012 Decision constituted a specific and legitimate reason to reject the opinions of Plaintiff's limitations rendered by examining Drs. Lampe, Trowbridge, and Zaragoza.  See Orn, 495 F.3d at 638 ("if a claimant complains about disabling pain but fails to seek treatment . . . an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated").

Moreover, even if the ALJ did err in his evaluation of the opinions of Drs. Lampe, Trowbridge, and Zaragoza, that error was harmless, as all three of these

10

examining physicians opined that Plaintiff's mental health symptoms would improve with treatment:  Dr. Lampe opined that her prognosis was "good" with appropriate treatment; Dr. Trowbridge stated that outpatient mental health treatment and medication was "likely to restore or substantially improve Plaintiff's ability to work for pay in a regular and predictable manner"; and Dr. Zaragoza stated that if treated, Plaintiff's condition would improve within the twelve months after his examination.  Consistent with these opinions, it appears from Plaintiff's statements in the record that the anti-anxiety medication previously prescribed by her primary care doctor sufficiently controlled her symptoms.  (See AR at 774 ("[S]he formerly took alprazolam for about six years [as needed], which she said 'helped' her."); id. at 806 ("She was prescribed medications by her primary care provider in 2002 . . . .  She claimed that her medications were helpful.").)  "Impairments that can be controlled effectively with medication are not disabling for purposes of eligibility for benefits."  Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006); see Odle v. Heckler, 707 F.2d 439, 440 (9th Cir. 1983) (where claimant's multiple impairments were controllable by medication or other forms of treatment, ALJ did not err by finding impairments did not significantly limit claimant's exertional capabilities).[6]

---

[6]  While the Court is mindful that disability benefits cannot be denied because of a claimant's failure to obtain treatment she could not obtain for lack of funds, Gamble v. Chater, 68 F.3d 319, 321 (9th Cir. 1995), there is no evidence that Plaintiff here did not obtain mental health treatment during the relevant period because she could not afford it.  Rather, she reported to Mr. Yabuki during a December 2010 psychosocial assessment that:  "she wanted to see a psychiatrist but could not afford to see one because she had no insurance in the past and it was not until 2002 that her internist began prescribing anti-anxiety medications for . . . use [as needed].  She said she currently is taking no anti-anxiety medications because her internist is refusing to prescribe it for fear of her becoming addicted to it."  (AR at 975.)  Based on this evidence, it appears that Plaintiff was not receiving

(continued...)

1    Thus, even assuming the Court were to find that the ALJ erroneously failed

2    to give any specific and legitimate reasons to reject the opinions of Drs. Lampe,

3    Trowbridge, and Zaragoza, which it does not, the error was harmless.  Stout v.

4    Comm'r of Soc. Security, 454 F.3d 1050, 1055 (9th Cir. 2006) (an ALJ's error is

5    harmless where such error is inconsequential to the ultimate non-disability

6    determination); Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1991) (harmless

7    error rule applies to review of administrative decisions regarding disability).

8        In part due to the same reason, Plaintiff fails to establish that the ALJ's non-

9    severity finding is not supported by substantial evidence.  Out of the limited

10   records Plaintiff relies on to assert a "significant[] shift[]" in the weight of the

11   evidence, only Dr. Trowbridge, Dr. Zaragoza, and Dr. Lewis opined that Plaintiff

12   would definitely (as opposed to just possibly have moderate limitations in certain

13   paragraph B criteria.  (See AR at 384-85 (Dr. Lampe's opinion), 1013 (Dr.

14   Riahinejad's opinion).)  As discussed above, the first two of these physicians

15   believed that Plaintiff's condition would improve with treatment, with Dr.

16   Trowbridge finding that treatment was "likely to restore or substantially improve

17   Plaintiff's ability to work for pay in a regular and predictable manner," and Dr.

18   Zaragoza finding that Plaintiff's condition would improve within twelve months of

19   receiving treatment.  With respect to Dr. Lewis, the ALJ rejected her opinion

20   because he found that she "cited scant treating source evidence in support of that

21   opinion, which rather appears to be an attempt on [Dr. Lewis'] part to give the

22   claimant the widest benefit of doubt in light of the fact that her earlier denial was

23   then still 'pending in federal court' . . . ."  (Id. at 421.)  The ALJ was permitted to

24

25         [6](...continued)

26   mental health treatment prior to 2002 because she could not afford it, but that as of
     2010, she was not on any anti-anxiety medication because her internist was

27   refusing to prescribe it – a reason unrelated to her financial condition.  Further, as
     the ALJ pointed out, Plaintiff was able to afford at least one trip to Japan in

28   September 2009.  (Id. at 422, 877.)

12

reject Dr. Lewis' opinion as conclusory and unsupported by Plaintiff's treating records.  See Batson v. Comm'r of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004).  Moreover, Dr. Kugaya's vague opinion that Plaintiff's "ability to work has been affected" by her depression fails to establish that her mental impairment is severe.  (Id. at 736.)

Finally, Plaintiff asserts that Mr. Yabuki's GAF score of 45 is "indicative of 'serious' symptoms, which should be somewhat easily construed as being consistent with the presence of [a] 'severe' mental impairment."  (JS at 9.)  The Commissioner has no obligation, however, to credit or even consider GAF scores in the disability determination.  See 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000) ("The GAF scale . . . is the scale used in the multiaxial evaluation system endorsed by the American Psychiatric Association.  It does not have a direct correlation to the severity requirements in our mental disorders listings."); see also Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy.").  Moreover, on the other occasions in the record when Plaintiff was assigned a GAF score, she received scores of 50[7] from Drs. Lampe, Trowbridge, and Zaragoza (AR at 384, 771, 809), as well as a score of 65[8] from Dr. Riahinejad (id. at 1013).  Thus, even if consideration of such scores was required, her overall scores were not sufficiently low that they raise any serious

---

[7]  A GAF score of 50 falls at the upper end of the "serious symptom" category, described as "(suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  DSM-IV 34.

[8]  A GAF score of 61 to 70 indicates "some mild symptoms, such as depressed mood and mild insomnia, or some difficulty in social occupational, or school function, such as occasional truancy or theft within the household, but generally functioning pretty well, and has some meaningful interpersonal relationships."  DSM-IV 34.

1   question about the ALJ's determination that Plaintiff's mental condition did not
2   significantly limit her ability to work.

3        Accordingly, the Court concludes that the ALJ properly found that
4   Plaintiff's mental impairment was non-severe in light of all of the evidence in the
5   record, including the opinions of Drs. Lampe, Trowbridge, and Zaragoza – and that
6   the ALJ provided legally sufficient reasons to reject those opinions.

## IV.

## ORDER

9        Based on the foregoing, IT IS THEREFORE ORDERED, that judgment be
10  entered affirming the decision of the Commissioner of Social Security and
11  dismissing this action with prejudice.

12  Dated: October 23, 2013

13                              HONORABLE OSWALD PARADA
14                              United States Magistrate Judge

14